Okay, Mr. Chaudhry. Yes, please. Thank you. Okay. Good morning. Thank you so much for the opportunity to—my first time, so I'm grateful. Thank you. Your Honors, this case is about a sanctions order signed by the Bankruptcy Court on a case that was filed by the Principals of the Debtor in the same Bankruptcy Court case. And the Bankruptcy Court was led to believe that there was a stay in place, an automatic stay in place, and the Principals of the Debtor were in violation of that stay order, which gave, apparently, the trustee the exclusive right to prosecute adversary proceedings on behalf of the debtor. However, when the Principals of the Debtor filed this case in 2019, the former trustee had lost standing as a result of the expiration of the trust that was created, which gave the trustee the authority to pursue proceedings on behalf of the debtor. At that time, though, did the trustee still have control over or access to the property or the assets through bank accounts or otherwise? Yes, he did, yes. That would be enough to confer standing, it seems to me. However, Your Honor, there is case law, and this comes from the Supreme Court, the Fifth Circuit decisions, that once you lose standing, in this case, there is an order of the Bankruptcy Court, and then on September 13th, an order came out. In the memorandum of opinion, Honorable Judge Isker confirms that the trustee does not have standing, and in the September 13th order, Judge Isker writes that the trust terminated on December 31st, 2018. Well, I know what you're telling us begs the question. We're here to decide, among other things, whether Judge Isker was correct in that ruling, and the question is whether a trustee who has been formally terminated but still has access to or control over the property, whether there is still standing for that reason. Your Honor, that's where the doctrine of mootness comes in. Whether the trustee was in control of the assets or the bank accounts or the debtor, the trust had expired by its terms on a date certain, and after that, it was moot. The standing issue, the jurisdiction of the Bankruptcy Court to issue orders pertaining to sanctions, all of the actions of the trustee became moot, and I have, in my letter brief submitted last month, addressed mootness, and I will quote from that. It's on page number three. Generally, mootness due to loss of standing is phrased in the plural to ensure the requirement that both parties to an action have maintained standing, and that is Sierra Club v. Glickman. Then there is another case, Goldeen v. Barthelot from the Fifth Circuit, 1999, which is what Judge Isker relied upon. For these two cases, and I quote, we have no power under Article III to decide the merits of a case that is moot when it comes before us. In other words, Your Honor, when the emergency motion came before Judge Isker, filed by the trustee, this issue had already become moot. Trustee had no standing, and then the court, after that, obtains the authority for vacatur of a moot case. And then in this situation, Your Honor, there are two types of mootnesses, one which occurs before the final orders of the district court, which applies here, and the other one is after the final orders of the district court. So, Your Honor, in response to your query, your question, regardless of the fact that the trustee had maintained control over the bank accounts, he still had no authority, no standing, and the doctrine of mootness applies. The other point I would make, Your Honor, in response to your query is that the doctrine of the law of the court, although it's discretionary, and it's up to the court to apply that here or not, but in this case, a court of competent jurisdiction has already ruled that retroactively, December 31st, 2018, the trustee, the former trustee, had no standing, and the trust came to an end at that time. Your Honor, I understand that trustee maintained control. The other thing that I'd like to bring to the court's attention is that the trustee, if the trustee had just maintained control of the bank accounts and acknowledged that the trust had expired or filed for an extension, then it would have made sense. Instead, the trustee continued to misrepresent to the court that the trust was still valid and the trustee still had authority to pursue actions on behalf of the debtor. Your Honor, my time was eight minutes, and I respectfully yield the rest of the . . . We're reserving five minutes for the rebuttal. My esteemed colleague, Mr. Chaddai, is here to present the rest of the arguments. All right, and he will be presenting all the rebuttal. Is that right? One of us or both of us would be both reserved. All right, well, we show a total of five minutes for rebuttal. All right, that'll be fine. Thank you. Thank you, Your Honor. Mr. Chaddai? Thank you, Your Honor. And if I may revisit the question you asked a moment ago . . . Would you remove your mask, please? Thanks. That's much better. Thank you. I'm just going to briefly revisit the answer to the question that you asked. The trustee, Mr. Chaudhary represented, had misled the court on several material facts. One of which was that the trust was still active. And, in fact, as recently as a few months ago, the trustee was still asserting that. The trustee has also been asserting to the court. And there were multiple sanctions granted on those two bases that he . . . The trustee had the exclusive authority to bring that claim. And then there was a stay in place, which was also not active. The stay had been lifted. And I'll refer to that in a minute here again. Mr. Chaudhary covered the standing component in great depth. There are a few other elements I want to bring to the attention to the court. Standing is a constitutional requirement and element of court subject matter jurisdiction. And that comes from page 3, Schweiker 786 Federal 2nd and 153rd. Well, we don't need to spend any time on whether standing is a requirement because we all know that. And we deal with standing in many cases. Yes, sir. You don't need to convince us of that. Okay. Thank you. The one thing I will mention on that is in the Appellee's brief, they have tried to re-characterize our issue on standing as an issue on capacity. That's not also accurate, Your Honor. We have re-standing. And they have tried to say that it has been waived because, truly, we must not be arguing standing. We were arguing capacity, but that's not the case. The court has already addressed that. The one thing we do want to address here is what this court said in the Golden case, that if a controversy became moot, and that, I think, becomes a central question here, is was it moot before the final judgment was rendered, or did it become moot after Judge Isker issued his order or made that declaration? Judge Isker declared the trust was void as of a date certain, which happened well before the order that is currently on appeal here was issued by the Bankruptcy Court and also by the District Court on its appeal. So, essentially, that trustee standing had been lost on December 31, 2018. We have been positing to this forum and also in our motions below the lower courts that a trustee no longer has standing after that date, and no further action on its part may be considered by the courts. Now, getting past the standing issue, there are some other arguments made on waiver also, and I want to address some of those to the court here. Clearly, standing cannot be waived, and we have dealt with that. The issue of punitive sanctions was also not waived as claimed by the appellee. We, in our brief, and in the order itself, the right to appeal the order was specifically preserved. The one thing the appellee is correct on is the amount of the sanctions was agreed to, but not their merit or the nature of the sanctions, whether they were punitive or compensatory or coercive, was not conceded at that point. The argument has been all along that those sanctions were punitive in their nature, and Judge in the Bankruptcy Court at that time, Judge Bohm, made it quite clear, and I will quote. There is a quote from Judge Bohm in the appellee's brief, where a judge reflected that he was right in the face by reading the adversary, and then I'm quoting a section a little further down from the same document that is on Record of Appeal, page 231. He said, I read it this morning, so the doctor is not going to get away with this. I just want you to know I have had it up to here with him, and that's where we stand. So that's where we are. So I want you to file that motion. There will be consequences. And subsequent to that, the order came out with the two components to it. One was the sanctions for that specific adversary filing, and the second part was if should they file any other claim, then they will be sanctioned about $100,000 for each filing that is made in pursuit of that. And then Judge Hughes vacated that part of the order, but the first part of the order that's sanctioned for about $40,000 or so remained in place. The issue here is we have this strange paradox where court has been misled, misrepresentations have been made, where the appellants have been heavily sanctioned throughout the history of the case by doing what the courts and the procedure requires them to do. There is no—even if there was a stay in place at that point in time, it would not have applied to an adversary in the same court where the bankruptcy case was pending, and we have an authority on that, and I think Mr. Chaudhary covered that. But the adversary is permitted in the home court, and this court ruled previously that it would lead to absurd results if we started applying the automatic stay to the home court where the bankruptcy case was pending. Then there was an argument also made about the inherent power of the court, and that argument is still alive. It has not been waived. And previously, this court in Bollack-Mariner Manufacturing Company v. Reiner in 4143-997 at page 1005 has said the inherent power should only be invoked when there has been some kind of fraud perpetrated on the court. The threshold is very, very high, and that was one of the claims we raised in our argument. So I'm just going to wrap this up by saying if the courts already considered the standing and the trustee had none, we request that the district court's order be vacated, and the case be remanded back to the court to dismiss in accordance with the court's rulings and instructions. All right. Thank you, Mr. Machado, and you've saved for your side a total of five minutes of rebuttal. All right. Mr. Curry? Thank you, Your Honor. May it please the court. This is an appeal of an order opposing monetary sanctions as a result of appellants having filed an adversary proceeding asserting claims and causes of action that had been assigned to the CI Litigation Trust pursuant to a confirmation order that was final and not subject to appeal. The filing of the adversary proceeding constituted a violation of the bankruptcy court's confirmation order and was one of multiple acts that the doctor appellants had taken throughout the course of the bankruptcy case to undo or frustrate the effectuation of certain transactions or other orders that had been consummated as part of the state court receivership for the debtors' Chapter 11 case and which had been either approved by final unappealable orders entered by the Texas State Receivership Court or the bankruptcy court. And those orders were never appealed, and they were final unappealable orders which were constantly assailed by collateral attack. So throughout the various attempts to unwind the state court receivership order, the sale order, and the confirmation order, the appellants have presented a series of fluctuating legal theories and factual allegations in an effort to find the right fit to undo what has long been done. And the shifting position in arguments has continued through this appeal, but today what I'd like to do is focus on one important finding in the bankruptcy court that supported the sanctions order. And that's a finding that remains uncontested throughout all the pleadings today. And in filing the adversary proceeding, the appellant knowingly acted in violation of the confirmation order. Now, appellant's counsel at the time testified to that fact on the stand and acknowledged in closing argument to the bankruptcy court that he had reviewed the confirmation order, that he was aware that at least some of the claims of causes of action that were being asserted in the adversary proceeding that was filed had been assigned to the CI Litigation Trust, and that the filing of the adversary proceeding constituted a violation of the confirmation order, and that yet, knowing this, he chose to file the adversary proceeding without first seeking relief from the confirmation order. He could have come in and sought relief from the confirmation order, and we've heard a number of excuses as to why relief from the confirmation order might have been granted, but the indisputable fact at the end of the show cause hearing was that before violating that order, no relief from the order was sought. And it's pretty much black letter law that regardless of our belief that an order may be just or that it may be just to obtain relief from an order, the decision to violate an order knowingly and willfully is still contemptuous, and an order entered finding a party in contempt and sanctioning a party for contempt in those circumstances is a valid order and is well within the inherent powers of the court. So where that leaves us is the situation here, again, I refer back to the ever-shifting situations and the arguments that are before this court, and as a matter of appellate procedure, I think this court is in a situation where it really lacks authority to consider the arguments that have been advanced today. And that is because when we look at what the appellants argued at the bankruptcy court, they defended their violation, their contempt, on three grounds. They argued, one, that the federal indictment of Diakar Moparty, who was the brother of one of the officers, former officers of the debtor, that his indictment for Medicaid fraud, or his conviction for Medicaid fraud, and indictment for insurance fraud, presented new evidence justifying relief from the confirmation order, again, relief that was not sought. Two, that the claims asserted in the adversary proceeding were both derivative and direct claims. In other words, they argued that both the trustee and the doctors owned the claims, so that while, yes, they were asserting claims that were owned by the trustee, they also owned the claims. And three, that an order approving a tolling agreement in a separate adversary proceeding, what we've referred to in our pleadings as the Moparty dismissal and tolling agreement, granted the doctor appellants the independent right to assert the trustee's claims against the Moparty brothers. Now, the bankruptcy court rejected each of these arguments. On appeal to the district court, the doctors continued to argue their arguments, and press their arguments that their claims were both direct and derivative, belonging both to the trust and the appellants, and that the tolling agreement gave two of the three appellants the right to prosecute the trustee's claims. But they abandoned their argument that the new evidence justified modification of the confirmation order. Judge Hughes, again, found their arguments regarding the claims being both direct and derivative, and the tolling agreement having given them leave uncompelling, and thus affirmed the bankruptcy court finding that the doctors had no right to have filed the adversary proceeding. On appeal to this court, the doctors have now abandoned all three of their justifications that they presented to the bankruptcy court, and have now expressly acknowledged that the claims that they asserted were unequivocally assigned to the trustee by the confirmation, under the debtor's confirmed third amended plan, and effectuated by the confirmation order. For the first time to this court, they argued that, however, they should be excused from having filed these claims, because the trustee, up until they filed it, their adversary proceeding, had been neglecting his obligation to file those claims. And under a theory extending Louisiana World Expo, the doctrine of derivative standing for creditors in bankruptcy cases, they argued that this court should excuse their contempt, because they alleged the trustee, who at that time they acknowledged when they first filed their brief, still had the exclusive right to file the claims, and was still in control of the claims, had not yet done so. So, after Appley filed this brief, after the deadline for appellants to file their reply, which they did not file, we get a motion to strike. And the motion to strike, the basis for the motion to strike, as we know, is the argument that the trust had expired. And this court has asked, and there are proceedings, there was also a motion for reconsideration filed on his sanctions. We did answer that motion to Judge Isger, pointing out that while Judge Isger could deny the motion, or ask leave of this court to rule on it, he lacked authority to rule on it without first getting leave from this court. He did ask for additional briefing. It is an interlocutory order that was entered on the expiration of the term of the trust. And we did point out in our letter brief that Judge Isger's initial finding regarding the date of termination of the trust does not necessarily have that much of an impact on this specific issue before this court. And that, Your Honors, goes exactly to the questions that you asked earlier of my colleague, which is, under Texas law, although a trust may expire, that does not necessarily terminate a trustee's duty to the beneficiaries under a trust agreement. And that makes a ton of sense if we think about it. But Texas law does not define a trust as an actual entity. It defines it as the relationship between the trustee and the beneficiaries vis-a-vis the property. As long as the trustee is holding property, he owes those fiduciary duties to protect that property. When a trust expires, those duties change. He has the duty to deliver the property to the beneficiaries in a manner defined in the trust agreement. But he still has fiduciary obligations. And if the appellants are taking an action that is interfering with his ability to discharge duties by which he is charged under the law, then he must have the ability to come into court and seek redress for that interference. And that's exactly what happened here. The trust did expire. But under the dismissal and totaling agreement, the same agreement that they initially relied on to say, hey, wait a minute, we get to file this adversary proceeding carte blanche, the issue of capacity. And while courts have routinely and lawyers have routinely mixed up use of the word standing and capacity, I think it's become more clear lately that when you're dealing with an assignment of a cause of action, we're talking about a capacity issue. And in the context of a bankruptcy case where we're taking a claim where the injury is to a debtor and we're allowing a trustee to pursue it for the benefit of creditors, that's clearly an assignment issue. And that's a capacity issue. And what we have here, then, is that the argument is that when the trust expired, the trustee's capacity to sue and take a recovery on behalf of the creditors ended. Well, one, because it's a capacity argument and it was never raised until after the close of briefing in this appeal, it's been waived. It cannot be the basis of a Rule 60 motion at the bankruptcy court. This court's precedent on that, as we pointed out in our briefing, is clear. That's an issue that is res judicata. A Rule 60 motion is a collateral attack, so it can't be raised there. But more importantly, the tolling agreement waived the capacity of defense as to the only parties that it should really actually matter, which are the defendants in that adversary proceeding. Those defendants agreed that they would never raise that defense. The trustee could sue them. And the bankruptcy court agreed that the trustee could bring the suit again, provided that it was within the time frames provided in the tolling agreement. So notwithstanding the fact that the trust expired, the trustee remained in control and possession of an asset that was not easily divisible. It was not liquid and not fungible. And pursuant to the terms of the trust agreement and the plan, it was now his obligation to distribute this asset. And the plan required him to distribute the asset in accordance with the priorities set forth in the bankruptcy code and in the plan. And that included paying, first, all outstanding administrative expense claims, second, paying all outstanding unsecured claims, and then and only then making a distribution to equity. And the reason that that's important is because each of the DACA appellants here today are equity interest holders. And there is no circumstance under which there would have ever been a distribution to equity. On December 31st, no matter what valuation we could possibly come up with, and the facts have worn this out over time, the value of the claims that the trustee held would not have provided a recovery to equity. So the defendants in the Moe Party adversary couldn't assert that the trustee couldn't bring the claims. The trustee had the right to refile the claims under the tolling agreement. He did so. Now, it is true that because the trust agreement had expired, any beneficiary of the trust agreement under Texas law could have come into the bankruptcy court and said, hey, bankruptcy court, this trust agreement says that I'm entitled to receive a distribution now, and I haven't received it. But no one did. And the reason no one did is because the parties who were next in line for distributions, the outstanding administrative expense creditors, approved of what the trustee was doing. And the only parties that were complaining were parties who were not likely to receive a distribution. And so when you go through the record and you consider the sum total of the events and the numerous acts to interfere with the orderly administration of the receivership and the bankruptcy and the administration of the trust, when you get through all of that, it becomes clear that the statements of Judge Boone weren't statements of this is going to be a punitive order. They were statements of this conduct has happened over and over again. And one of the things that I am required to consider in entering coercive sanctions is what type of sanctions will finally prevent you from continuing to do that which you should not do. And that's the context in which those statements were made, not a statement of punishment. Well, I'm not asking you to concede or agree with what I'm about to say, although you're free to do so. But my impression through the years has been that Judge Boone, who has now retired, had a tendency to be a bit heavy-handed from the bench when it came to such things as penalties and sanctions. And so we need to, I think, take that into account in considering the case as an overall matter. I would agree with Your Honor. But one thing that I would point out to that point is we asked for more than we got. And so I'd ask you to take into consideration exactly what you just said, that Judge Boone did have a tendency to be heavy-handed in his sanctions when he was as frustrated as he was. And yet he did restrain himself, and he did not give us as much as we asked for in sanctions. So I think just in summary, I want to make it clear that the appellants knowingly violated a court order. Their own counsel testified that he knew when he filed the adversary proceeding that he was filing it in violation of the confirmation order. And we've heard several ex post explanations as to why that contempt should not have been sanctioned. But nothing changes the fact that it was contempt, and they knew it was contempt at the time that it was done. The fact that the trust had expired does not change the fact that that contempt interfered with the trustee's ability to liquidate one of the last remaining assets of the trust and distribute it, as the trustee was required to do under both Texas law, the plan, and the confirmation order. Now, they've mentioned Golden, and I just briefly want to point out that Golden is distinguishable fairly easy on these facts, which is in Golden, there was a provision that required that were the trust to terminate with remainder assets, the remaining assets were to be deposited in the registry of the court, and the court was to serve as the distributing agent for those remaining assets, not the trustee. The CI Litigation Trust does not have a distributing agent for remaining assets. The trustee is the distributing agent for any remainder assets. What Texas law says on how remaining assets are to be distributed in that circumstance is up to the trustee's business judgment, provided that it doesn't violate Texas law and it doesn't violate the trust agreement and the principles therein. Again, we've briefed this fairly extensively, but the core principles are the assets need to be distributed in a way that they could be distributed fairly in accordance with priority under the plan and the bankruptcy period. Unless your honors have any further questions, I'll rest with that. All right. Thank you. Thank you, your honors. All right, on rebuttal for the appellants, a total of five minutes. Thank you, your honor. The peculiarity of this case, your honor, is that we have this strange situation where the appellants have had to constantly defend themselves against the fiduciaries appointed by the court for their behalf, to protect their interests, whether it was the receiver, and now it's the trustee. And so I want to address some of the things counsel raised here. Trustee, when the issue at hand was raised, the trustee was not claiming the fiduciary. He was claiming that trust was intact and it had the exclusive authority to bring those claims. He was not claiming that we are interfering with our distribution of those assets. That claim was very different at that point in time. It was also inaccurate, but that was the thing. It kept claiming that it had the exclusive authority to bring those claims well past the expiration of the trust. Counsel also invoked the Texas law on trust. It was also raised in front of the bankruptcy court. Bankruptcy court did not quite buy the argument for good reason. The Texas law does not change the explicit terms of the trust. The trust, by its own terms, explicitly expired on December 31st, 2018. There is no changing that by invoking other statutory changes of the Texas law. The court doesn't get in the way of that. The court actually honors the explicit terms of the trust. Then the second claim that we heard a lot today, and that's consistent with how this case has played out at every level. In lower courts, there have been blatant misrepresentations and fraud on the court, and we have a motion pending on that in the bankruptcy court, a 60D3 motion. But here, what we are hearing and has been argued all along is that there was a violation of the confirmation order. That is also not accurate. The confirmation order lifted the stay. The paragraph 36 of the order lifted the stay, and it made two exceptions, and the appellee acknowledges that part. It is in the appellee's brief. The language is there. What they are then doing is conflating a few other things to try and twist it. The language there basically said the stay is lifted as of the notice date, and the notice date happened to be July in 2016, and I think I'll get the date here in a second. I believe it was July 14 or 16, July 14 of 2016. Trustee issued the notice. Stay was lifted as of that day. The only exceptions in the confirmation order as to the stay were Article 10 of the plan, which dealt with the admin litigation that you heard about a little bit, and the resolution of certain conditions precedent to the plan. They were met. Actually, Trustee declared that those conditions were met in his notice of the invocation date. The other thing that the order reserved, the confirmation order reserved, was to invoke the Section 524 and 1121 of the Bankruptcy Code, and neither of those two apply here. The adversary was not about seeking, making claims against the debtor for debt. The adversary was about fraud and conversion. There was a completely different set of claims and facts being alleged there. That's the irony here, is that after the trust expired, and Trustee had no other authority, the only people who were authorized to bring the adversary brought it, and they got sanctioned for doing it. The issue on claims being derivative and independent, that has been talked about before. We stand behind what we have briefed here. There are elements of the claims that we still believe were independent of what the debtor would have inherited as part of the thing. So this is one of those things, damned if you would, damned if you don't, where if the benefit goes to the trustee, the trustee's arguing, but I'm the only one who's allowed to bring it. Not just take it, bring it. And if you don't, they're saying, well, then you have no standing. Well, in this case, the doctors who have been vindicated now in the ACNA proceeding, that they were never parties to the fraud that other participants took full responsibility for, this is not a collateral attack on the judgment. We are in the appellate level. Standing can be raised at any time, including an appeal. All right, thank you, Mr. Buchanan. Your case is under submission. Last case for today, Easley v. Lowndes County, Mississippi.